IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN MACVICAR, JR; and MARY
SCHMITT,

                Plaintiffs,

      v.

ABRAHAM J. BARNETT; CHRISTENE
D. CENCER; BEN F. VERALRUD; THE
BARNETT FIRM, LLC; and BOHICA, INC.,
dba FREEBORN MOTOR COMPANY,

                Defendants.

No. 3:18-cv-01378-HZ

OPINION & ORDER

Justin M. Baxter
BAXTER & BAXTER LLP
8835 SW Canyon Lane, Suite 130
Portland, Oregon 97225

Keith D. Karnes
KARNES LAW OFFICES, PC
3857 Wolverine Street NE, Suite C-20
Salem, Oregon 97305

      Attorneys for Plaintiff

Brian B. Williams
Alison R. Barber
HITT HILLER MONFILS WILLIAMS LLP
411 SW Second Avenue, Suite 400
Portland, Oregon 97204

   Attorneys for Defendants Abraham Barnett and
   The Barnett Firm, LLC

Nicholas E. Wheeler
Brandon L. Thornburg
COSGRAVE VERGEER KESTER LLP
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204

   Attorneys for Christene D. Cencer

HERNÁNDEZ, District Judge:

   Plaintiffs John MacVicar, Jr., and Mary Schmitt bring this action against Defendants

Abraham J. Barnett, The Barnett Firm, and Christene Cencer.[1] Plaintiffs bring state tort claims

along with federal claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §

1692, and 42 U.S.C. § 1983. Defendants now move to dismiss this action for lack of subject

matter jurisdiction and for failure to state a claim.[2] The Court grants in part and denies in part

Defendants' motions.

///

---

[1] Plaintiffs' Amended Complaint also named Defendants BOHICA, Inc. dba Freeborn Motor
Company, and Ben Veralrud. Plaintiffs have since filed stipulated dismissals of both Defendants.
Stips., ECF 41, 44. Prior to Defendant BOHICA's dismissal, it filed a motion to dismiss and
strike against Plaintiffs' First Amended Complaint and a motion for judicial notice. Def.
BOHICA Mot. Dismiss, ECF 20; Def. BOHICA Mot. Jud. Notice, ECF 21. Though these
motions are now moot as to Defendant BOHICA, Defendants Barnett, The Barnett Firm, and
Cencer have incorporated Defendant BOHICA's arguments into their respective motions.
[2] Defendants also moved to strike Plaintiffs' state law claims under Oregon's Anti-SLAPP
statute. This motion substantially overlaps with Defendants' motion to dismiss under Rule
12(b)(6). The basis of Defendants' Anti-SLAPP motion is that Plaintiffs are unlikely to succeed
on their state tort claims because Defendants' allegedly tortious statements and conduct are
protected by Oregon's absolute litigation privilege. Because the Court finds that Plaintiffs' state
tort claims are barred by the absolute privilege in ruling on Defendants' motions to dismiss, the
Court declines to reach the motion to strike.

**BACKGROUND**

BOHICA, Inc., dba Freeborn Motors, operates a used car lot in Lafayette, Oregon. First Amended Compl. ("FAC") ¶ 10. During the events that underlie this action, Defendant Barnett and The Barnett Firm ("Barnett Firm") represented BOHICA and, in this capacity, collected debts for BOHICA by suing customers in default, garnishing their wages, and engaging in other collection efforts. FAC ¶ 11. Defendant Cencer collected debts as an attorney employed by Defendant Barnett Firm. FAC ¶¶ 4, 12.

In September 2011, Plaintiff MacVicar purchased a vehicle from BOHICA. Def. BOHICA Req. Judicial Notice ("Def. RJN") Ex. 1 at 4, ECF 21; FAC ¶ 13. Around May 14, 2014, Defendant Barnett and Barnett Firm, on behalf of BOHICA, filed a suit against Plaintiff MacVicar alleging that he had defaulted on his payments to BOHICA. FAC ¶ 13; Def. RJN Ex. 1. Three months later, Defendants obtained a default judgment against Plaintiff MacVicar. FAC ¶ 14. Two months after that, Defendants filed a motion in the underlying debt-collection action alleging that they had served interrogatories on Plaintiff MacVicar and that he failed to respond. FAC ¶ 15; Def. RJN Exs. 3–4. The next day, the Yamhill County Circuit Court entered an order to show cause why Plaintiff MacVicar should not be held in contempt for his failure to respond to the interrogatories. FAC ¶ 16. This order generated a new case in Yamhill County for remedial contempt against Plaintiff MacVicar. *Id.*

In February of 2015, Plaintiff MacVicar appeared for a hearing in the contempt matter in the Yahmill County Circuit Court and met with Ben Veralrud, an attorney employed by Defendant Barnett Firm. FAC ¶¶ 5, 17; Def. RJN Ex. 6 (transcript of proceedings). Allegedly, after speaking with Plaintiff MacVicar, Mr. Veralrud realized that Plaintiff MacVicar did not have the ability to pay the judgment. FAC ¶ 19. Accordingly, Mr. Veralrud presented Plaintiff

MacVicar with: (1) a document whereby Plaintiff MacVicar would pay BOHICA $60 per month towards the debt and (2) a stipulated judgment of contempt and money award holding Plaintiff MacVicar in contempt should he fail to make payments as required under the new agreement. *Id*; Def. RJN Ex. 6 at 9:22–10:9, Ex. 7. These agreements were entered into the record in the contempt case. FAC ¶ 20; Def. RJN Ex. 7. Plaintiffs allege, however, that these documents are null and void because they would require Plaintiff MacVicar to pay $60 per month from his own labor or face being jailed, placing Plaintiff MacVicar "in an illegal state of peonage in violation of 42 U.S.C. § 1994." FAC ¶¶ 21, 22.

The Yamhill County Circuit Court set a hearing for December 5, 2016, to review the status of Plaintiff MacVicar's agreement to pay $60 per month. FAC ¶¶ 23, 24. That day, Defendant Cencer moved to continue the hearing because Plaintiff MacVicar had been making ongoing payments. FAC ¶ 25; Def. RJN Ex. 10. She allegedly also told the court that Plaintiff MacVicar had not been served with the motion to continue because he was in default, even though "there were no default findings in the contempt matter." FAC ¶¶ 25, 26; Def. RJN Ex. 11 at 3. The hearing was reset to December 28, 2017, but Plaintiff MacVicar was not served with the order resetting the hearing. FAC ¶ 27; Def. RJN Ex. 11 at 1–2. As a result, Plaintiff MacVicar did not appear at the hearing on December 28. FAC ¶ 28.

At the hearing, Defendant Cencer asked the court to enter the stipulated judgment of contempt and issue an order for a bench warrant for Plaintiff MacVicar's arrest. FAC ¶ 29; Def. RJN Ex. 12 at 3:19–22. In seeking the judgment and warrant, Defendant Cencer allegedly informed the court that Plaintiff MacVicar had been served notice of the order requiring his appearance at the December 28, 2017 hearing and that Plaintiff MacVicar was not making the agreed-upon payments to BOHICA. FAC ¶ 30; Def. RJN Ex. 12 at 3:10–19. Accordingly, the

court issued the bench warrant and signed the stipulated judgment. FAC ¶ 30; Def. RJN Exs. 13–14. The stipulated judgment found Plaintiff MacVicar in contempt of court for willfully failing to respond to the interrogatories in the underlying debt collection matter. Def. RJN Ex. 13. It further provided that a Plaintiff MacVicar:

> [S]hall be confined for the shorter of so long as the contempt continues or six months, that bail shall be set at $9,804.47, that the warrant shall direct any funds posted as bail to be disbursed to [Defendants or BOHICA], that [BOHICA] have judgment against [Plaintiff MacVicar] for attorney fees in the amount of $1,281.25 and costs in the amount of $150.00, and that an execution shall issue for these amounts.

Def. RJN Ex. 13. Plaintiffs allege that no one informed Plaintiff MacVicar "of his right to counsel as required prior to the arrest warrant being issued." FAC ¶ 29. Plaintiffs also allege that both of Defendant Cencer's statements to the court were false. FAC ¶ 31.

On January 19, 2018, Plaintiff MacVicar was arrested and spent two days in Washington County Jail. FAC ¶¶ 33, 34. He was held on $9,804.47 bail, roughly the outstanding judgment owed to BOHICA. FAC ¶ 35. To raise bail, Plaintiff MacVicar called his mother—Plaintiff Mary Schmitt—who used her savings to pay the bail in full. FAC ¶ 37.

 Plaintiff MacVicar was released from jail and contacted Defendant Barnett Firm to determine what steps he needed to take to settle his debt. FAC ¶¶ 38, 39. Allegedly, Defendant Barnett Firm and Plaintiff MacVicar agreed that a payment of $4,500 would satisfy the debt owed to BOHICA in full. FAC ¶ 40. Around January 24, 2018, Plaintiff MacVicar paid Defendant Barnett Firm $4,500 and received a satisfaction of judgment signed by Defendant Cencer. FAC ¶ 41; Pls. Req. Judicial Notice ("Pls. RJN") Ex. 1.

On January 30, 2018, Defendant Barnett filed a motion to vacate the satisfaction claiming the "satisfaction signed by [Defendant] Cencer was 'inadvertent.'" FAC ¶ 41; Pls. RJN Exs. 2–3. Defendant Barnett's motion was granted ex parte. FAC ¶ 43; Pls. RJN Ex. 4. A week later,

Defendant Barnett filed an ex parte motion for disbursement of the entire bail money despite also having possession of the $4,500 paid by Plaintiff MacVicar the previous month. FAC ¶ 44; Def. RJN Ex. 15. This, too, was granted without notice or a hearing to Plaintiff MacVicar. FAC ¶ 45; Pls. RJN Ex. 7. Plaintiffs allege that Defendants retained possession of both the bail money and the $4,500. FAC ¶ 46.

Plaintiff Schmitt called Defendant Barnett and complained about the duplicative payments. FAC ¶ 47. Defendant Barnett "indicated that if [Plaintiff] Schmitt continued to complain he would bill against the $4,500 for his time in dealing with her and stated [Plaintiff] MacVicar should still be in jail." *Id.*

Plaintiffs filed this action on July 23, 2018. Compl., ECF 1. They filed a First Amended Complaint on October 5, 2018. FAC, ECF 16. Plaintiffs allege that Defendants have violated various sections of the FDCPA. FAC ¶¶ 51–52. Plaintiffs also allege that by procuring a contempt order, obtaining an arrest warrant, and collecting bail money (among other things), Defendants have acted under color of state law and violated Plaintiff MacVicar's Fourth, Fifth, Sixth, Thirteenth, and Fourteenth Amendment rights as well as his right to be free from peonage. FAC ¶¶ 53–57. Plaintiffs also bring claims for false imprisonment, abuse of a vulnerable person under Or. Rev. Stat. § ("ORS") 124.100 et seq., and intentional infliction of emotional distress. FAC ¶¶ 58–66. Plaintiff MacVicar alleges that as a result of Defendants' conduct, he "has suffered the loss of his money, confinement in jail, upset, worry, frustration, and other negative emotions." FAC ¶ 49. Plaintiff Schmitt has also "suffered lost [sic] use of her money, upset, worry, frustration, and other negative motions." FAC ¶ 50.

///

///

**STANDARDS**

## I.      Subject Matter Jurisdiction

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1)

addresses the court's subject matter jurisdiction.  The party asserting jurisdiction bears the burden

of proving that the court has subject matter jurisdiction over his claims.  *Kokkonen v. Guardian*

*Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A Rule 12(b)(1) motion may attack the substance of the complaint's jurisdictional

allegations even though the allegations are formally sufficient.  *See Corrie v. Caterpillar, Inc.*,

503 F.3d 974, 979-80 (9th Cir. 2007) (court treats motion attacking substance of complaint's

jurisdictional allegations as a Rule 12(b)(1) motion); *Dreier v. United States*, 106 F.3d 844, 847

(9th Cir. 1996) ("[U]nlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the

substance of a complaint's jurisdictional allegations despite their formal sufficiency[.]") (internal

quotation omitted).  Thus, the court may consider evidence outside the pleadings to resolve

factual disputes.  *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *see also Dreier*,

106 F.3d at 847 (a challenge to the court's subject matter jurisdiction under Rule 12(b)(1) may

rely on affidavits or any other evidence properly before the court).

## II.      Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of the claims.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "All allegations of material

fact are taken as true and construed in the light most favorable to the nonmoving party."  *Am.*

*Family Ass'n, Inc. v. City & Cnty. of S.F.*, 277 F.3d 1114, 1120 (9th Cir. 2002).  To survive a

motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face[,]" meaning "the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In other words, a complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

However, the court need not accept conclusory allegations as truthful. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations.") (internal quotation marks, citation, and alterations omitted). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

## DISCUSSION

Defendants move to dismiss Plaintiffs' claims for lack of subject matter jurisdiction and failure to state a claim.[3] First, Defendants argue that this Court lacks jurisdiction over Plaintiffs' federal claims under the *Rooker-Feldman* doctrine. Second, Defendants contend that Plaintiffs

---

[3] Defendants and Plaintiffs also ask the Court to take judicial notice of various documents from the underlying state court proceedings. Def. BOHICA Req. Judicial Notice, ECF 21; Pls. Req. Judicial Notice, ECF 25. No party objects to these requests, and the Court finds that these documents are properly subject to judicial notice. *See* FRE 201; *K.F. Jacobsen & Co. v. Gaylor*, 947 F. Supp. 2d 1120, 1122–23 (D. Or. 2013) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n.6 (9th Cir.2006)) ("A court may take judicial notice of complaints and briefs filed in another case to determine what issues were before that court and were actually litigated.").

have not alleged that Defendants were acting under color of state law as required under § 1983. Finally, Defendants assert that Plaintiffs' tort claims are barred by Oregon's absolute litigation privilege. The Court agrees with Defendants that Plaintiffs cannot bring their state tort and § 1983 claims. However, because this Court finds that it has jurisdiction over Plaintiffs' FDCPA claims, it declines to dismiss this action in its entirety.

## I.      The *Rooker-Feldman* Doctrine

Defendants move to dismiss Plaintiffs' federal claims, arguing that "[t]his action constitutes a de facto appeal of the state court judgment." [4] Def. BOHICA Mot. Dismiss 10, ECF 20; Def. Barnett and Barnett Firm Mot. Dismiss ("Def. Barnett Mot. Dismiss") 3, ECF 30; Def. Cencer Mot. Dismiss, ECF 29. "Under *Rooker–Feldman*, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)). Instead, such jurisdiction is vested solely in the United States Supreme Court. *Id.*; *see also* 28 U.S.C. § 1257 (giving the Supreme Court exclusive jurisdiction over certain appeals of the final judgments or decrees rendered by the highest court of a state).

"The clearest case for dismissal based on the *Rooker–Feldman* doctrine occurs when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision[.]'" *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007) (quoting *Noel*, 341 F.3d at 1164). The doctrine bars lower federal courts "from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008)

---

[4] Because the Court finds that Plaintiffs cannot bring their § 1983 and state tort claims, the Court has limited its discussion of *Rooker-Feldman* to Plaintiffs' FDCPA claims.

(internal quotation marks omitted); *see also Johnson v. De Grandy*, 512 U.S. 997, 1005–1006 (1994) ("[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."). In addition, "[i]f a federal plaintiff seeks to bring a forbidden de facto appeal, that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state court judicial decision." *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013) (noting that the "inextricably intertwined" language is "not a test to determine whether a claim is a de facto appeal" but rather a distinct, second step in the *Rooker-Feldman* analysis, triggered only where the action contains a de facto appeal).

The Supreme Court has cautioned that the doctrine should be applied narrowly and is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Lance v. Dennis*, 546 U.S. 459, 464 (2006) ("[O]ur cases since *Feldman* have tended to emphasize the narrowness of the *Rooker-Feldman* rule."). *Rooker-Feldman* does not bar jurisdiction "if . . . a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party[.]" *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (2004) (quoting *Noel*, 341 F.3d at 1164). The doctrine "applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state court judgment." *Id.*

For example, in *Jenkins-Brown v. Liberty Acquisitions Servicing, LLC*, the district court found that the plaintiff's FDCPA claims were not barred by *Rooker-Feldman*. No. 0314-CV-01610-ST, 2015 WL 5561055, at *5–6 (D. Or. Sept. 14, 2015). There, the plaintiff alleged in her

complaint that the defendant had claimed a right to interest that it was not legally entitled to in the underlying state court proceedings. *Id.* at *5. In other words, the court concluded that the plaintiff had alleged that the defendant "committed illegal acts separate and apart from the state court's entry of judgment against her . . . by misrepresenting both to her and the state court that it had a right to collect interest on the overdraft debt." *Id.* In its analysis, the court emphasized that the plaintiff did not seek to disturb the state court judgment but, instead, sought separate relief under the FDCPA. *Id.* at *6. Moreover, the plaintiff sought statutory and actual damages under the FDCPA and did not seek recovery of the overdraft debt. *Id.*

Similarly, in *Linfoot v. Bernardi*, the district court found that *Rooker-Feldman* did not bar a claim for declaratory relief where the plaintiff alleged that the defendants had procured the default judgment in the underlying state case by "illegal actions" and "intrinsic fraud." *Linfoot v. Bernardi*, No. 3:12-cv-00799-HU, 2013 WL 957634, at *4 (D. Or. Mar. 11, 2013). Specifically, the plaintiff asserted that the defendants had made fraudulent misrepresentations to the state court, including misrepresenting that the plaintiff had been properly served with process. *Id.* The court reasoned that this conduct constituted "extrinsic fraud under Ninth Circuit precedent" and was, therefore, not an impermissible de facto appeal of the state court decision. *Id.* (citing *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981)).

Turning to the present case, the Court finds that Plaintiffs' FDCPA claim is not barred by the *Rooker-Feldman* doctrine. Though it is unclear from Plaintiffs' complaint which specific conduct by Defendants serves as the basis for Plaintiffs' claim,[5] Plaintiffs indicate in their brief that Defendants violated the FDCPA claim by: (1) coercing Plaintiff MacVicar into entering an unconscionable agreement; (2) making false statements to the court regarding the outstanding

---

[5] Plaintiffs bring their FDCPA claim under 15 U.S.C. §§ 1692e, 1692e(2), 1692e(4)–(8), 1692e(1), 1692f, 1692f(1), and 1692f(5). FAC ¶ 52.

judgment owed; (3) making false statements to the court regarding service of process on Plaintiff MacVicar; (4) imprisoning Plaintiff MacVicar; and (5) misrepresenting the outstanding judgment owed to Plaintiffs and the state court. Pls. Resp. BOHICA Mot. Dismiss ("Pls. Resp. BOHICA") 15–16, ECF 23; Pls. Resp. Barnett and Cencer Mots. Dismiss ("Pls. Resp. Barnett") 12–14, ECF 38.

As a preliminary matter, the Court notes that the FDCPA claim brought by Plaintiff Schmitt is not barred by *Rooker-Feldman*. She was not a party to the underlying proceedings. *Lance*, 546 U.S. at 464 ("[W]e have held *Rooker-Feldman* inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding.").

As to the claim brought by Plaintiff MacVicar, the Court also finds that this claim is not barred by *Rooker-Feldman*. Plaintiffs do not seek to disturb the judgment of the state court, which adjudged Plaintiff MacVicar in contempt of court for failing to respond to Defendants' interrogatories in the debt collection matter. Nor do they allege any legal error by the state court. Rather, Plaintiffs allege unlawful acts by Defendants, who were adverse to Plaintiff MacVicar in the underlying action. Specifically, Plaintiffs allege that Defendants acted unlawfully in coercing Plaintiff MacVicar into an unconscionable agreement regarding repayment of the debt, seeking issuance of the stipulated judgment and warrant, and making misrepresentations to the state court about the status of the debt owed and service of process. *See Satre v. Wells Fargo Bank, N.A.*, 507 F. App'x 655, 656 (9th Cir. 2013) (reversing the district court and finding that the plaintiffs' claims were not barred by *Rooker*-Feldman because the plaintiffs alleged illegal acts and omissions by the defendants).

Similarly, Plaintiffs primarily seek actual and statutory damages related to Defendants' unlawful conduct in the underlying proceedings. FAC at 9. Though undoubtedly some of these

damages stem from injuries related to the judgment—including Plaintiff MacVicar's arrest and imprisonment and Plaintiffs' monetary losses—this alone does not render Plaintiffs' claim unviable under *Rooker-Feldman*. *See Bell*, 709 F.3d at 897 ("Although Plaintiffs sought relief designed to remedy injuries suffered from a state court judgment, they did not allege before the court that the state court committed legal error, nor did they seek relief from the state court judgment itself."). As Plaintiffs' claim and injuries are focused on the allegedly illegal acts committed by Defendants in the underlying proceedings, and Plaintiffs do not directly challenge the state court's factual or legal conclusions, *see id.*, Plaintiffs' FDCPA claim is not a de facto appeal of the state court judgment. Accordingly, the Court denies Defendants' motion for lack of subject matter jurisdiction under Rule 12(b)(1).

## II.     Failure to State a Claim under 42 U.S.C. § 1983

Defendants also move to dismiss Plaintiffs' § 1983 allegations under Rule 12(b)(6). Def. BOHICA Mot. Dismiss 14–18; Def. Barnett Mot. Dismiss 6–7; Def. Cencer Mot. Dismiss 2. Defendants argue that—as private actors—they are not liable under § 1983 unless Plaintiffs can show that they jointly participated in unconstitutional behavior with the state. *Id.* Defendants argue that Plaintiffs have failed to allege facts to show that the state court conspired with them to violate Plaintiff MacVicar's constitutional rights. *Id.* Plaintiffs respond that "[t]he Firms' use of state court procedures to have plaintiff MacVicar jailed and to extract money from him without simple due process being followed, is state action." Pls. Resp. Barnett 18 (citing *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 941–42 (1982)); Pls. Resp. BOHICA 19.

Under 42 U.S.C. § 1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of

any rights, privileges, or immunities secured by the Constitution and laws, shall
be liable to the party injured in an action at law[.]

"To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured

by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by

a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir.

2006). "[M]ost rights secured by the Constitution are protected only against infringements by the

government[.]" *Brunette v. Humane Soc'y of Ventura Cty.*, 294 F.3d 1205, 1209 (9th Cir. 2002)

(citing *Lugar*, 457 U.S. at 936).

However, "a litigant may seek damages under 42 U.S.C. § 1983 from a private party

based on the violation of a constitutional right" if the plaintiff can show that "the private party

engaged in state action under color of state law[.]" *Id.* "[S]tate action may be found if, though

only if, there is a 'close nexus between the State and the challenged action' that seemingly

private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn.*

*Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metro Edison Co.*,

419 U.S. 345, 351 (1974)). "To prove a conspiracy between the state and private parties under

section 1983, [the plaintiff] must show an agreement or meeting of the minds to violate

constitutional rights." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–

41 (9th Cir. 1989). In the Ninth Circuit, "[a] private lawyer representing a client in the lawyer's

traditional adversarial role is not considered a state actor for purposes of § 1983." *Subramaniam*

*v. Mosman*, No. 3:17-CV-01627-RJB, 2017 WL 6887138, at *3 (D. Or. Oct. 31, 2017) (citing

*Simmons v. Sacramento Cty. Superior Court*, 318 F.3d at 1156, 1161 (9th Cir. 2003)).

In *Lugar v. Edmonson Oil Co.*, the Supreme Court found a private party acted under color

of state law by depriving the petitioner of property through the use of state procedures. 457 U.S.

at 942. There, the petitioner was the operator of a truck stop indebted to the respondent, his

supplier. *Id.* at 924. The respondent sued on the debt owed and sought prejudgment attachment of the petitioner's property. *Id.* After the attachment—which had been obtained through an ex parte petition pursuant to a state prejudgment attachment procedures—was dismissed, the petitioner brought a § 1983 suit against the respondent. *Id.* at 924–25.

The Court began its analysis by recognizing that "the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the state":

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.

*Id.* at 937. The Court then held that under the facts of that case "the petitioner [had been] deprived of his property through state action" and that "respondents were . . . acting under color of state law in participating in that deprivation." *Id.* at 942. In reaching its decision, the Court emphasized that petitioner had challenged the state statute as unconstitutional under the Fourteenth Amendment and that state officials had participated in the violation of the petitioner's rights by attaching property on the ex parte application of the respondent. *Id.* at 941; *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 n.6 (1982) (indicating that "[t]he Court held that § 1983 applied because . . . the sheriff's involvement [executing the attachment] satisfied the state action requirement"). The Court also noted, however, that petitioner did not present a valid cause of action "insofar as he alleged only misuse or abuse of the statute." *Lugar*, 457 U.S. at 942. It further limited its holding in a footnote:

> [W]e do not hold today that "a private party's mere invocation of state legal procedures constitutes 'joint participation' or 'conspiracy' with state officials

satisfying the § 1983 requirement of action under color of state law." The holding today, as the above analysis makes clear, is limited to the particular context of prejudgment attachment.

*Id.* at 939 n.21 (internal citations omitted).

Here, Plaintiffs cannot show that Defendants—private attorneys representing a private party in a civil proceeding—are state actors. First, as noted above, decisions of the Ninth Circuit and this district court have held that attorneys representing a client in a traditional adversarial role are not "state actors" under § 1983. *Subramaniam*, 2017 WL 6887138 at *3; *see also Simmons v. Sacramento Cty. Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003) (The court found that the plaintiff could not sue defense counsel in the underlying civil action under § 1983 "because he is a lawyer in private practice who was not acting under color of state law. Plaintiff's conclusory allegations that the lawyer was conspiring with state officers to deprive him of due process are insufficient.").

Second, Plaintiffs in this case merely allege that Defendants invoked—and misused— state legal procedures. *See* Pls. Resp. Barnett 18 ("The Firms' use of state court procedures to have plaintiff MacVicar jailed and to extract money from him without simple due process being followed, is state action."). Unlike the petitioner in *Lugar*, Plaintiffs do not contend that the procedures utilized by Defendants are procedurally defective in violation of the Fourteenth Amendment. Nor do Plaintiffs plausibly allege that a state official was involved in any prejudgment attachment proceeding or that the judge conspired with the Defendants in some way. *Cf. Dennis v. Sparks*, 449 U.S. 24, 28–29 (1980) (finding that private parties were acting under color of state law where the official act of the judge was the product of a corrupt conspiracy involving bribery of the judge by the parties). Plaintiffs' conclusory allegation that the circuit court "entered into an agreement" with the attorneys to violate Plaintiff MacVicar's

civil rights by entering the parties' stipulated agreements into the court record, issuing an arrest warrant pursuant to that agreement, and granting Defendants' *ex parte* motions is inadequate, without more, to demonstrate joint action. *See Schucker v. Rockwood*, 846 F.2d 1202, 1205 (9th Cir. 1988) (finding the plaintiff's "conclusory allegations that [a judge] conspired with the law firms [were] insufficient to support his section 1983 claim"). Further, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Dennis*, 449 U.S. at 29. Accordingly, the Court finds Plaintiffs have not alleged that Defendants were acting under the color of state law in representing their client in the underlying contempt and debt collection proceedings. Plaintiffs' claim under § 1983 must be dismissed.

## III. Oregon's Absolute Litigation Privilege

Defendants also argue that Plaintiffs cannot bring their alleged state law claims for false arrest, abuse of a vulnerable person, and intentional infliction of emotional distress. Def. BOHICA Mot. Dismiss 18–19; Def. Barnett Mot. Dismiss 7; Def. Cencer Mot. Dismiss 2. Because Plaintiffs' state tort claims are based on statements made by Defendants in the course of or incidental to the underlying state court proceedings, Defendants contend that Plaintiffs' claims are barred by Oregon's absolute litigation privilege. *Id.* This Court agrees.

"Oregon courts have long recognized, and enforced, an absolute privilege for statements in the course of or incident to judicial and quasi-judicial proceedings." *Mantia v. Hanson*, 190 Or. App. 412, 417, 79 P.3d 404 (2003). This privilege "applies equally to parties to such proceedings and to their attorneys." *Id.* The purpose of the privilege is to provide "attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients," *Id.* at 418 (quoting Restatement (Second) of Torts (1977) § 586, cmt. a)). Thus, "the privilege is

absolute. It protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity." *Id.*

To be privileged, statements must refer to the subject matter of the litigation and be made in connection with a judicial proceeding. *Wollam v. Brandt*, 154 Or. App. 156, 162–63, 961 P.2d 219 (1998). The absolute privilege encompasses statements made both in court and in advance of judicial or quasi-judicial proceedings. *Id.* at 163. For the statement or conduct to be encompassed by the privilege, it must be "pertinent and relevant to the issues" in the pending litigation. *Id.* at 162. In determining whether a statement is pertinent and relevant, "courts are liberal and the privilege embraces anything that may possibly be pertinent. All doubts should be resolved in favor of its relevance and pertinency." *Id.* at 163 (internal citations and ellipses omitted).

Plaintiffs make three arguments challenging the application of the absolute litigation privilege. First, Plaintiffs argue that the privilege does not apply to their claim for false imprisonment. Pls. Resp. BOHICA 20–26; Pls. Resp. Barnett 21–25. Second, regarding Plaintiffs' abuse of a vulnerable person claim, Plaintiffs suggest that the absolute privilege cannot be asserted by Defendants against Plaintiff Schmitt, who was not a party to the underlying litigation. *Id.* Finally, Plaintiffs argue that Defendants' statements were not made in the course of or incidental to the underlying court proceedings and, therefore, fall outside the scope of the privilege. *Id.* The Court addresses each argument in turn.

A. Scope of the Absolute Privilege

Plaintiffs rely on *Hiber v. Creditors Collection Service of Lincoln County, Inc.*, 154 Or. App. 408, 961 P.2d 898 (1998), in making their argument that the absolute litigation privilege does not apply to claims for false imprisonment where the attorney is alleged to have acted in

bad faith or with malice. Pls. Resp. BOHICA 22. Plaintiffs are correct that the Oregon Court of Appeals in *Hiber* indicated that "an attorney is liable for an arrest made upon a warrant only if, in seeking issuance of the warrant, he or she acts in bad faith, intentionally misrepresents facts to the judge, or otherwise acts with malice."[6] 154 Or. App. at 410. But in that case, the Court of Appeals also indicated that "the proper action in a case of this kind is a claim for malicious prosecution or wrongful initiation or civil proceedings, both of which require a showing of malice or bad faith." *Id.* at 420. That same year, the court of appeals also found that "[t]he absolute privilege applies . . . to any tort action based on statements made in connection with a judicial proceeding." *Wollam*, 154 Or. App.at 162 n.5.

Five years after *Hiber*, the court further clarified its earlier holding, noting "we ultimately characterized a false imprisonment claim predicated on an attorney's filing of pleadings as being, in effect, a wrongful initiation claim, *subject to all of the requirements of such a claim.*" *Mantia*, 190 Or. App. at 427 (emphasis added). Thus, contrary to Plaintiffs' argument, the absolute privilege applies to all tort actions with only one exception: "An actor's conduct is so egregious as to be deprived of the protections of the absolute privilege when that conduct satisfies the elements of wrongful initiation." *Id.* at 429.

Accordingly, in the present case, Plaintiffs' claim for false imprisonment is barred unless they can meet all the requirements of a claim for wrongful initiation of civil proceedings.[7]

---

[6] The Court also notes that *Hiber* involved the application of a "qualified privilege" for irregularities in a warrant. 154 Or. App. at 415 ("The general rule . . . is that for most irregularities in a warrant, an attorney enjoys a form of immunity or privilege[.]"); *see also Mantia*, 190 Or. App. at 426 (describing *Hiber* as holding that "a qualified privilege protected the attorney's actions").

[7] The elements of such a claim are: "(1) The commencement and prosecution by the defendant of a judicial proceeding against the plaintiff; (2) The termination of the proceeding in the plaintiff's favor; (3) The absence of probable cause to prosecute the action; (4) The existence of malice, or as is sometimes stated, the existence of a primary purpose other than that of securing

Because Plaintiffs cannot demonstrate that the underlying proceedings terminated in Plaintiff

MacVicar's favor, *see Alvarez v. Retail Credit Ass'n*, 234 Or. 255, 259–60, 381 P.2d 499 (1963),

Plaintiffs' claim for false imprisonment is subject to the absolute privilege.

B.   Application to the Claims of Third Parties

Turning to Plaintiffs' second argument, Plaintiffs assert that the absolute litigation

privilege does not bar Plaintiff Schmitt's claims because she was not a party to the prior

litigation. Pls. Resp. BOHICA Mot. Dismiss 23 (citing *Wickenkamp v. Hostetter Law Grp., LLP*,

2:15-cv-00296-PK, 2016 WL 10677908, at *19 (D. Or. July 14, 2016), *report and*

*recommendation adopted*, 2016 WL 10677905 (D. Or. Aug. 17, 2016)). As the district court

noted *Wickenkamp*, it appears to be an "open question of Oregon law whether the litigation

privilege may be asserted against a person not a party to the prior litigation." *Id.* The Court finds,

however, that there is "no good policy ground for limiting the applicability of the litigation

privilege to claims brought by named parties to the original litigation." *Id*. After all, the purpose

of the absolute privilege is to ensure that persons engaged in the judicial process can speak freely

without fear and to provide attorneys "the utmost freedom in their efforts to secure justice for

their clients." *Mantia*, 190 Or. App. at 418.

Thus, the absolute privilege should not be limited in this case to only those claims

brought by Plaintiff MacVicar. Doing so could undermine the purpose of the privilege.

Accordingly, like Plaintiff MacVicar's claim for false imprisonment, both Plaintiffs' claims for

intentional infliction of emotional distress and Plaintiff Schmitt's claim for abuse of a vulnerable

person are subject to the absolute litigation privilege. *See Franson v. Radich*, 84 Or. App. 715,

719, 735 P.2d 632 (1987) (holding that the absolute privilege applies to claims for intentional

---

adjudication of the claim; and (5) Damages." *Alvarez v. Retail Credit Ass'n*, 234 Or. 255, 259–
60, 381 P.2d 499 (1963).

infliction of emotional distress); *Graham v. U.S. Bank, Nat'l Ass'n*, No. 3:14-CV-0990-AC, 2015

WL 10322087, at *16 (D. Or. Dec. 2, 2015), *report and recommendation adopted,* 2016 WL

393336 (D. Or. Feb. 1, 2016) (dismissing an Unfair Trade Practices Act Claim and finding

"[s]tatutory torts are subject to the litigation privilege").

   C.   Statements Made in the Course of Judicial Proceedings

   Finally, Plaintiffs argue that the privilege is inapplicable to the present case because

Defendants' statements were not made in the course of or incidental to the underlying

proceedings. Pls. Resp. BOHICA 25; Pls. Resp. Barnett 24–25. Specifically, Plaintiffs contend

that that Defendants' statements fall outside the scope of the privilege because the statements

constitute extrinsic fraud on the court and are "more than" false statements in furtherance of their

client's interest. *Id.*

   It is immaterial, however, whether the statements were false or made in bad faith or with

malice. *See Moore v. West Lawn Mem'l Park*, 266 Or. 244, 249, 512 P.2d 1344 (1973) (noting

the privilege protects attorneys from liability "even though the defamatory matter is uttered

maliciously, as well as falsely"); *see also Brown v. Gatti*, 195 Or. App. 695, 701, 99 P.3d 299

(2004) *rev'd on other grounds* 341 Or. 452 (2006) ("The privilege, in other words, confers a

license to lie."). With the sole exception of claims for wrongful initiation of civil proceedings or

malicious prosecution, a plaintiff cannot bring tort claims against a defendant for statements

made in the course of or incidental to litigation regardless of their purpose.

    Further, all the alleged statements and acts underlying Plaintiffs' tort claims were made

in the course of or incidental to the debt-collection or contempt proceedings. For example, the

basis for Plaintiffs' claim of false imprisonment appears to be Defendant Cencer's allegedly false

statements to the circuit court at a hearing on December 28, 2017. FAC ¶¶ 30–31. Similarly, the

Plaintiffs' abuse of a vulnerable person claim is premised on Defendants' collection of the bail money from the circuit court and Defendant Barnett's subsequent communication with Plaintiff Schmitt about the disbursement of the bail money. FAC ¶¶ 44–47. Plaintiffs' IIED claim appears to be based on the same conduct. *See* Pls. Resp. Barnett 24–25. Accordingly, Plaintiffs' tort claims are all barred by absolute privilege.

## VI.    Leave to Amend

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The district court has discretion whether to allow amendment. *Tracht Gut, LLC v. L.A. Cnty. Treasurer & Tax Collector (In re Tracht Gut, LLC)*, 836 F.3d 1146, 1151 (9th Cir. 2016) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) ("'[T]he grant or denial of an opportunity to amend is within the discretion of the District Court.'"). As the parties' relationship was centered exclusively around the underlying state court litigation, the Court has some doubt Plaintiffs can bring state tort claims against Defendants in this case that would not be subject to Oregon's absolute privilege. However, it cannot say with certainty that any amendment in this case would be futile. *See Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014) ("Futility can, by itself, justify denial of a motion for leave to amend."). Accordingly, the Court grants Plaintiffs leave to amend their complaint to cure the deficiencies identified above as to Plaintiffs' state tort claims.

///

///

///

///

///

**CONCLUSION**

Defendants' Motions to Dismiss [20][29][30] are GRANTED in part and DENIED in part. Plaintiffs' 42 U.S.C. § 1983, false imprisonment, abuse of a vulnerable person, and intentional infliction of emotional distress claims are dismissed. Plaintiffs shall file a Second Amended Complaint curing the identified deficiencies within 14 days of this Opinion & Order.

IT IS SO ORDERED.

Dated this _____ day of _____, 2019.


MARCO A. HERNÁNDEZ
United States District Judge